IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Fay N. Scott,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>South Carolina Office of Attorney General,<br><br>　　　　Defendant. | C/A No.:<br><br>**COMPLAINT**<br>**(Title VII Discrimination (Race, National Origin), Age Discrimination in Employment Act, Retaliation)**<br><br>(Jury Demand) |

Plaintiff Fay N. Scott (hereinafter "Plaintiff") complaining of Defendant South Carolina Office of Attorney General, (hereinafter "Defendant"), would show unto this Court as follows:

## NATURE OF THE ACTION

1. Plaintiff brings this action against her former employer, Defendant South Carolina Office of Attorney General for race and national origin discrimination and retaliation pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, as well as for age discrimination pursuant to the Age Discrimination in Employment Act.

## VENUE AND JURISDICTION

2. At all relevant times, Plaintiff was an employee of Defendant. Plaintiff is a citizen and resident of the County of Richland, State of South Carolina.

3. Defendant is a state agency organized and existing under the laws of South Carolina, which does business and has a facility in Richland County, South Carolina. Defendant is an employer within the meaning of Title VII and the ADEA.

4.     Jurisdiction is proper in the County of Richland, where most or all the allegations contained herein took place.

5.     Plaintiff filed timely charges of discrimination and the Equal Employment Opportunity Commission issued a *Determination and Notice of Rights to sue* dated February 10, 2023. This action is filed within 90 days of Plaintiff's receipt of that *Notice*.

6.     Plaintiff has fully exhausted her administrative remedies.

7.     Plaintiff's claims arise under the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* and the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.* This Court has jurisdiction of the action under 42 U.S.C. § 2000e-5(t) and 28 U.S.C. § 1345. Venue is proper in this judicial district under 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. § 1391(b) because it is where a substantial part of the events or omissions giving rise to the cause of action herein occurred.

## **FACTS**

8.     Plaintiff is a 70-year-old black woman of Jamaican national origin.

9.     Defendant is the state's chief prosecution office, with approximately 300 employees and 90 attorneys.

10.     In 2000, Plaintiff was admitted to the practice of law in Connecticut. In 2004, she was admitted to the practice of law in South Carolina.

11.     In 2005, Plaintiff began working for the Defendant as an Assistant Attorney General. Plaintiff prosecuted domestic violence cases in rural counties under a grant.

12.     Plaintiff did her job well and secured convictions in significant cases. South Carolina historically had some of the worst rates of domestic violence in the nation. By thoughtfully and effectively prosecuting domestic violence first offenders and securing

their participation in diversion programs, Plaintiff and her colleagues significantly reduced the rates of domestic violence in rural areas throughout the state and improved the state's rank nationally.

13.     The domestic violence grant concluded in 2008. After that, Plaintiff was assigned to the Defendant's Medicaid Fraud Control Unit where she worked until her separation in 2021.

14.     Before the out-going director, Bill Gambrell, announced his retirement to the Medicaid Fraud Control Unit, he told Plaintiff that Attorney General Wilson wanted the unit to be headed by a younger person.

15.     Plaintiff also noticed that white employees, younger employees, and employees of U.S. origin were favored for hiring and advancement. Almost everyone who was hired after Plaintiff enjoyed significantly higher wages and salary increases even though their rank was lower than that of Plaintiff's rank as Senior Assistant Attorney General. Plaintiff's promotion to Attorney IV did not come with any pay raise.

16.     On September 9, 2020, Plaintiff sent an email to an investigator expressing her concerns that despite the investigator's agreement with Plaintiff, an elected official was charged with only six months of wrongdoings, under a misdemeanor statute that is not related to Medicaid fraud, when the evidence showed that for about 15 years, she has been billing Medicaid for services that she did not provide. Plaintiff was aware of the Post and Courier's Watchdog expose about elected officials receiving special treatment or not being held accountable for allegations of misconduct and misuse of taxpayers' money, so she strove to maintain the integrity of the Unit and avoid negative publicity on the Office.

17. On October 20, 2020, that investigator submitted indictments to Attorney General Alan Wilson for his signature. These indictments had Plaintiff's initials, indicating that she had drafted them. However, this was false. The investigator had drafted the indictments at the direction of the Director, Stephanie Goddard. (white female under the age of 40 of U.S. origin), and submitted them to Attorney General Alan Wilson for his signature without giving Plaintiff the opportunity to personally review, edit, and resubmit them. The indictments contained significant errors. Plaintiff was deeply concerned about her initials being applied to the indictments without her authorization, the errors in the indictments, and possible unauthorized practice of law by the investigator. Plaintiff hit "reply all" in her desperate attempt to stop the erroneous indictments from being signed and sent to the grand jury. Instead of applauding Plaintiff's efforts to protect the Defendant from public scrutiny of a potentially devastating oversight and ensure Defendant's compliance with obligations of professional responsibility, Director Goddard issued an oral reprimand reduced to writing that accused Plaintiff of "disseminating the email and "question[ing] the ethical operation of the Attorney General's Office..." She was clearly more concerned that Plaintiff had written down her concerns and its being subject to the Freedom of Information Act than the significant ethical issue that Plaintiff helped the Defendant avert.

18. On September 14, 2021, Chief of Prosecution, Heather S. Weiss (white female younger than Plaintiff of U.S. origin), filed a Complaint with the Office of Disciplinary Counsel, alleging that Plaintiff had improperly communicated with a represented criminal defendant.

19. In 2008, Plaintiff initiated, and the Director adopted, the practice of the assigned attorney informing the Solicitor and the Clerk of Court when the Unit arrests a defendant in their county, and request that all related documents be sent to that attorney. The new Director changed this procedure. Attorneys no longer supervise the investigators on their cases and the duty to send the letter to the Solicitor's office and the Clerk's office had been taken away from Plaintiff. The Director signs and sends the letters, and Plaintiff must rely on documentation in the case file as to whether that letter was sent. The file contained the criminal defendant's change of address form sent from the Solicitor's Office and a draft letter that was never sent to the Solicitor and the Clerk. Therefore, although the arresting officer's name and address is on the warrant, the defendant's attorney apparently did not know that the Medicaid Fraud Control Unit was prosecuting the case and thus, did not send a notice of appearance nor his discovery request to Plaintiff.

20. Plaintiff did not knowingly communicate with a represented party. As Plaintiff explained to Weiss, the case file did not reflect any information indicating that the criminal defendant had an attorney. There was no notice of appearance from defendant's counsel, nor any motions or other filings that would indicate that she was represented. Plaintiff contacted her because she did not respond to invitation to come and review Defendant's records before her arrest and would likely not respond to another letter. Furthermore, when Plaintiff asked if she had given any thought as to how to resolve the case, she did not say she had an attorney. She said that she did not know why she was arrested. When Plaintiff invited her to review the records, she did not say she had an attorney. Therefore, on the third occasion when Plaintiff and the criminal defendant were discussing options and she said she had been calling the public defender without success, Plaintiff

reasonably believed that she was seeking representation. Plaintiff fully disclosed the inadvertent contact with the represented party in a letter to the defendant's attorney. There has been no adverse finding against Plaintiff at the Office of Disciplinary Counsel. Plaintiff is represented in that matter and vehemently contests Weiss' complaint.

21. On October 5, 2021, Weiss sent Plaintiff an email informing her that Plaintiff was not to make any legal decisions on cases or give any legal advice. The email imposed a lengthy list of limitations regarding Plaintiff's ability to do her job.

22. On October 22, 2021, Chief Deputy Attorney General Jeffrey Young (white male of U.S. origin) informed Plaintiff that her work was "not up to standards" —despite sixteen years of positive performance evaluations and a clean disciplinary record—and that she was being discharged. Young gave Plaintiff the option of resigning or be terminated, and told her to pack her things and leave the office immediately.

23. Plaintiff was forced to resign on November 2, 2021.

24. Defendant had a pattern of accusing Plaintiff of wrongdoing that was the result of others' errors.

25. For example, regarding Plaintiff's objection to the indictments with her initials that she had not drafted, Plaintiff was making her best effort to protect the office from a potentially improper, unethical, unlawful error that could have had significant negative ramifications to Defendant. Also, Plaintiff's effort to ensure that the City Council member was appropriately charged was to maintain the integrity of the Unit, nullify the victim's sister's claim of agency misuse of taxpayers' money, and possibly avoid media scrutiny from the Post and Courier.

26.    Defendant's supposed cause to discharge Plaintiff was pretextual. Plaintiff reasonably relied on, and should have been able to rely upon, the contents of the Defendant's case file, and the criminal defendant's failure to assert that she was represented, in her decision to communicate with the criminal defendant.

23.    Defendant did not follow its progressive disciplinary procedures.

24.    Defendant selectively enforced its policies in a manner that targeted Plaintiff due to her race, age, and national origin.

25.    Defendant created a hostile work environment.

26.    Plaintiff suffered damages as a result of Defendant's actions.

### FOR A FIRST CAUSE OF ACTION
(Race and National Origin Discrimination in Violation of Title VII)

27.    Plaintiff repeats and re-alleges all the preceding paragraphs of this Complaint as if fully set forth in this section.

28.    Defendant knowingly and willfully violated Title VII of the Civil Rights Act of 1964 by selectively enforced its policies in a manner that targeted Plaintiff due to her race and national origin, by holding her responsible for the mistakes of white employees, and by forcing her resignation on false and pretextual grounds.

29.    As a direct result and consequence of Defendant's discrimination against Plaintiff, Plaintiff has suffered and will continue to suffer damages including but not limited to lost wages and benefits, harm to her reputation, lost career opportunities, and has and will continue to experience emotional distress, mental anguish, humiliation and other compensatory damages.

30. As a further direct result and consequence of Defendant's actions, Plaintiff is entitled to back pay, fringe benefits, reinstatement, front pay, compensatory damages, punitive damages, and attorney's fees and costs.

## FOR A SECOND CAUSE OF ACTION
(Age Discrimination)

31. Plaintiff repeats and re-alleges all the preceding paragraphs of this Complaint as if fully set forth in this section.

32. The aforementioned actions of Defendant were violations of the Age Discrimination in Employment Act of 1967 (ADEA). Defendant knowingly and willfully violated the ADEA by selectively enforced its policies in a manner that targeted Plaintiff due to her age, by not increasing her wages consistent with that of other employees, by holding her responsible for the mistakes of younger employees, and by forcing her resignation on false and pretextual grounds.

33. As a direct result and consequence of Defendant's discrimination against Plaintiff, Plaintiff has suffered and continues to suffer damages including but not limited to lost wages and benefits, harm to her reputation, lost career opportunities, and has and will continue to experience emotional distress, mental anguish and humiliation.

34. As a further direct result and consequence of Defendant's actions, Plaintiff is entitled to back pay, fringe benefits, reinstatement, front pay, compensatory damages, punitive damages, and attorney's fees and costs.

## FOR A THIRD CAUSE OF ACTION
(Retaliation pursuant to both Title VII and ADEA)

35. Plaintiff repeats and re-alleges all the preceding paragraphs of this Complaint as if fully set forth in this section.

36.     Plaintiff raised concerns about her treatment to supervisors and members of management before her forced resignation.

37.     Rather than investigate Plaintiff's concerns, Defendant retaliated against Plaintiff by taking away her responsibilities and forcing her to resign.

38.     As a direct result and consequence of Defendant's discrimination against Plaintiff, Plaintiff has suffered, and continues to suffer damages including but not limited to lost wages and benefits, harm to her reputation, lost career opportunities, and has and will continue to experience emotional distress, mental anguish, humiliation and other damages.

39.     As a further direct result and consequence of Defendant's actions, Plaintiff is entitled to back pay, fringe benefits, reinstatement, front pay, compensatory damages, punitive damages, and attorney's fees and costs.

**FOR A FOURTH CAUSE OF ACTION**
(Wrongful Discharge in Violation of Public Policy)

40.     Plaintiff repeats and re-alleges all the preceding paragraphs of this Complaint as if fully set forth in this section.

41.     Defendant's purported basis for Plaintiff's termination is pretextual and retaliatory.

42.     There is a clear mandate of public policy against the unauthorized practice of law. S.C. Code 40-5-310.

43.     Plaintiff raised significant and valid concerns regarding the unauthorized practice of law when an investigator affixed her initials on indictments to be submitted to a grand jury without her authorization.

44. Defendant expressed clear animus toward Plaintiff for raising this concern, and even disciplined her as a result.

45. Defendant's decision to force her to resign was motivated in whole or in part by her raising concerns about the investigator's unauthorized practice of law.

46. As a direct result and consequence of Defendant's actions against Plaintiff, Plaintiff has suffered and will continue to suffer damages including but not limited to lost wages and benefits, harm to her reputation, lost career opportunities and has and will continue to experience emotional distress, mental anguish, humiliation and other compensatory damages.

47. As a further direct result and consequence of Defendant's actions, Plaintiff is entitled to back pay, fringe benefits, front pay, compensatory damages, punitive damages, and attorney's fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the entry of an Order granting judgment in her favor and against Defendant for back pay, front pay, fringe benefits, interests, compensatory damages, punitive damages, attorney's fees (should Plaintiff obtain counsel in this matter), and costs and for all other and further relief available to her under Title VII as this court deems appropriate under the circumstances.

Respectfully Submitted,

Fay N. Scott
P.O. Box 291391
Columbia, SC  29229
fns11179@gmail.com
(803) 556-2001

May 10, 2023

Columbia, South Carolina

10